UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOHANNA CLEARFIELD,

               Plaintiff,

        - against -

HCL AMERICA INC. and KEVIN MCGEE,
*Individually,*

               Defendants.

------------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

     Plaintiff, JOHANNA CLEARFIELD, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA") and the New York City Human Rights Law, New York City Administrative Code § 8-107(1), *et seq.,* ("NYCHRL") and seek damages to redress the injuries Plaintiff has suffered for being subjected to discrimination by Defendants based on her disability/perceived disability (Post-Concussion Syndrome.)

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. § 12101 *et seq.,* and 28 U.S.C. §§ 1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under the NYCHRL pursuant to 28 U.S.C. § 1367.

4.   This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the events giving rise to this action occurred within the Southern District.

## PROCEDURAL PREREQUISITES

6.   Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7.   Plaintiff received a Notice of Right to Sue from the EEOC, dated March 8, 2017 with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

8.   This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

9.   Plaintiff JOHANNA CLEARFIELD (hereinafter "CLEARFIELD") is a resident of the State of New York and County of Kings.

10.   Defendant HCL AMERICA INC. is a foreign business corporation, duly existing pursuant to, and by virtue of, the laws of the State of California, with its principal executive office located at 330 Potrero Avenue, Sunnyvale, California 94085.

11.   At all times relevant, Plaintiff CLEARFIELD was an employee of Defendant HCL AMERICA INC., holding the position of "Executive Assistant." Plaintiff worked at Defendant HCL AMERICA INC.'s New York office, located at 623 Fifth Avenue, 19th Floor, New York, NY 10022.

12.   Defendant KEVIN MCGEE (hereinafter "MCGEE") is an employee of Defendant HCL AMERICA INC., holding the position of "Senior Vice President-Chief Risk Officer."

13.    At all times relevant, Defendant MCGEE was Plaintiff's supervisor and had the authority to hire, terminate and/or change the terms and conditions of Plaintiff's employment.

14.    Defendants HCL AMERICA INC. and MCGEE shall be referred to herein as the "Defendants."

## MATERIAL FACTS

15.    Plaintiff CLEARFIELD commenced her employment with Defendant HCL AMERICA INC. as an Executive Assistant to the Chief Privacy Officer and his team on or about May 2014 at a salary of approximately $71,500 per year.

16.    Plaintiff's job duties included but were not limited to management of all executive functions, including scheduling, arranging meetings and appointments, making travel arrangements, tracking business expenses, coordinating meetings with staff in foreign offices, managing databases and agendas, gathering data, and creating presentations.

17.    In or around September 2015, Plaintiff began to suffer from significant migraines and short-term memory issues, which affected her job performance.

18.    By way of example, there was one occasion when Plaintiff forgot to double-check plane reservations.  Although HCL AMERICA INC.'s Travel Department was responsible for the gaff, Defendant MCGEE admonished Plaintiff, threatening, "There will not be a next time.  I don't care what HR says or does, I want you out of here.  These are my last words."

19.    On or about September 29, 2015, Plaintiff was seen by her neurologist, Dr. Tanya Fatimi, who recommended that Plaintiff undergo a CAT scan for her migraines.  On November 2, 2015, Dr. Fatimi scheduled Plaintiff for a CAT scan, which was performed on November 5, 2015.  The cat-scan results showed some minor brain damage, tearing and encephalitis (water on the brain).

3

20. Subsequently, Dr. Fatimi explained that in order to better treat the migraines, Plaintiff should see a doctor more experienced in that specific area and referred Plaintiff to Dr. Daniel Torres who specialized in concussions, specifically post-concussion disorders. Dr. Fatimi also suggested that Dr. Torres could facilitate more thorough diagnostics, including an MRI. Dr. Fatimi recommended Plaintiff take a leave of absence to complete more testing including another Cat Scan and an MRI. Dr. Fatimi's opinion was that the pressure increase and short-term memory issues required more specific medications which could be provided by Dr. Torres.

21. After undergoing extensive testing, including the MRI, Plaintiff was diagnosed with Post-Concussion Syndrome on or around November 5, 2015.

22. Dr. Fatimi and Dr. Torres recommended that Plaintiff take some time off from work both for recovery as well as for a series of more thorough diagnostic testing.

23. About a month before Plaintiff learned of her Post-Concussion Syndrome, on October 8, 2015, Defendant MCGEE placed Plaintiff on a Performance Improvement Plan (PIP). Most issues set forth in the PIP were a product of Plaintiff's short-term memory difficulties, which were related to her Post-Concussion Syndrome.

24. Due to her Post-Concussion Syndrome, Plaintiff was on short-term disability leave from November 5, 2015 until January 3, 2016.

25. Plaintiff's neurologist, Dr. Daniel Torres, prescribed medications to Plaintiff, which greatly lessened the severity of her migraines and alleviated most of the symptoms associated with Post-Concussion Syndrome. The change in medication helped Plaintiff to focus and work more productively. Problems with short-term memory loss were alleviated.

26. As such, on December 28, 2015, Plaintiff's primary care physician, Dr. Carmen Bosch, authorized Plaintiff's return to work effective January 4, 2016.

27. Upon her return to work on January 4, 2016, Plaintiff faced immediate hostility by Defendant MCGEE.

28. On Plaintiff's first day back, Defendant MCGEE e-mailed Plaintiff asking to speak with her regarding "urgent matters" that required Plaintiff's attention without any inquiry into Plaintiff's health.

29. Furthermore, Plaintiff learned that Defendant MCGEE had relocated to Florida but failed to inform Plaintiff, his executive assistant, of this important piece of information.

30. In February 2016, Plaintiff underwent an MRI exam, which confirmed brain damage and confirmed Plaintiff's diagnosis of Post-Concussion Syndrome.  When Plaintiff attempted to explain the MRI results to Defendant MCGEE, he stated that the company did not have time for "head cases" and that he had to "run a business, not a rehab center."

31. Plaintiff responded that she had brain damage but all she needed was the new medication and time to check her work.  Defendant MCGEE then stated, "I don't have time for this!  I can't deal with this right now.  I want you out of here.  Let's go back to my travel request."

32. Plaintiff felt hurt and humiliated by Defendant MCGEE's hostile behavior.

33. Furthermore, Defendant MCGEE tried to intimidate Plaintiff into quitting her job by telling her that a new Head of Sales, Arthur Filip, would need an Executive Assistant in his office in Evergreen, New Jersey and that Plaintiff would work for Mr. Filip in addition to working for Defendant MCGEE.  Defendant MCGEE attempted to further intimidate Plaintiff by telling her that she would have to work from Mr. Filip's office, which he described as "depressing, dark, very hard to get to" and "one of the worst places [Defendant MCGEE had] ever been

to."

34.  Then, on or about February 18, 2016, Plaintiff learned that Defendant MCGEE had requested that Plaintiff be barred from accessing his e-mails and calendar. However, Defendant MCGEE's e-mail and calendar had continued to appear, as usual, in Plaintiff's computer until Defendant MCGEE learned through Plaintiff that she still had access to his e-mails and calendar.

35.  Plaintiff realized that Defendant MCGEE was attempting to make Plaintiff's job impossible by denying her access to his e-mails and calendar, as access to same was crucial for Plaintiff to be able to perform the essential functions of her job. Specifically, without access to Defendant MCGEE's e-mails, Plaintiff would not be able to manage upcoming trips, new meetings and requests and, without access to his calendar, Plaintiff could not confirm or create meetings on Defendant MCGEE's behalf. Plaintiff felt that Defendant MCGEE was setting Plaintiff up for failure and preparing to terminate her employment.

36.  Thus, Plaintiff e-mailed Prasath Panneerselvam, Human Resources' Group Manager, expressing her apprehension regarding her possible termination based on Defendant MCGEE's behavior towards Plaintiff. In her e-mail, Plaintiff stated that while she still had some issues with short-term memory, she was improving with medication. Plaintiff then added that she was "working under the extreme strain of knowing that [she was] on a warning [PIP] which could lead – at any moment – to [her] termination" adding that she "also knew] that the issues which were cited as the reason for [her] warning have all but vanished and were related to [her] brain injuries [Post-Concussion Syndrome]." Additionally, Plaintiff stated that there were "many signs which seemed to point to [her] termination abound" such as Defendant MCGEE's decision to block Plaintiff from

accessing his e-mails, which were essential to the performance of her job.

37. Mr. Panneerselvam advised Plaintiff to continue working without access to Defendant MCGEE's e-mail and calendar. Plaintiff complied and continued to perform her work for Defendant MCGEE to the best of her ability.

38. However, Defendant MCGEE continued to express hostility towards Plaintiff.

39. By way of example, Defendant MCGEE repeatedly made comments to Plaintiff regarding her mental health, such as, "If your medical condition is preventing you from doing your job, you really need to go," "What is taking you so long, we really don't need a head case," "I want you out of here." Furthermore, Defendant MCGEE made it clear that Plaintiff's PIP was simply a way to get her fired.

40. By way of another example, on or about March 8, 2016, Defendant MCGEE called Plaintiff from Miami regarding travel arrangements. Since the office was noisy, Plaintiff stepped into an empty office where she could work with Defendant MCGEE using her laptop. As Plaintiff informed Defendant MCGEE that she was stepping into the empty office, asking him to hold momentarily, Defendant MCGEE angrily ordered Plaintiff to stay at her desk and "know her place." Defendant MCGEE admonished Plaintiff by saying, "You are assigned a desk, you will stay at your assigned seat."

41. Plaintiff felt hurt and humiliated by Defendant MCGEE's unwarranted hostility.

42. Subsequently, Plaintiff continued to perform her job and support her team despite Defendant MCGEE's treatment of Plaintiff.

43. On or about June 22, 2016, Mr. Panneerselvam informed Plaintiff that her position was being "dissolved" and that Defendant HCL AMERICA INC. was giving Plaintiff a two to four-week window to be placed in another position within HCL AMERICA INC. Plaintiff

was shocked that her position was being "dissolved" as she worked not only for Defendant MCGEE but also supported Kristie Chon, Anna Wong, Nick Fresina, Stephanie Kim, Larry Sobers, Philip Ramey, and Yoseph Elchaim.

44.     Plaintiff soon learned, however, that her position was not being "dissolved" as Defendant MCGEE had placed a job search post for Plaintiff's "Executive Assistant" position in Defendant's office in Noida, India.    An Executive Assistant was hired within approximately one or two weeks of Plaintiff's return from short-term disability leave.

45.     In July 2016, Plaintiff e-mailed Mr. Panneerselvam twice - the first time informing him that Defendant MCGEE placed a job search for an "Executive Assistant" in Noida, India and the second time regarding Stephanie Kim informing Plaintiff that an "Executive Assistant" was hired in India, reporting to Ms. Kim's group (Ms. Kim's group reported to Defendant MCGEE).

46.     Then, on August 10, 2016, Mr. Panneerselvam informed Plaintiff that Defendant HCL AMERICA INC. would offer Plaintiff a front desk position which was a demotion in title, prestige and compensation.   Offended by the proposed demotion, Plaintiff declined.

47.     Then, on September 14, 2016, Mr. Panneerselvam sent Plaintiff a letter stating that Plaintiff would be terminated from her employment with Defendant HCL AMERICA INC effective September 28, 2016, stating, "As you are aware that your current assignment has come to an end.   We are making our best efforts to identify another position that may be a match for your skills and experience.   However, we cannot guarantee we will be able to find a position for you.    Therefore, you should plan that your employment with HCL America will end on September 28th 2016."

48.     Plaintiff was, in fact, terminated on September 28, 2016.

49.   Based upon the aforementioned conduct, it is clear that Defendant discriminated against Plaintiff CLEARFIELD based on her disability and/or perceived disability by failing to engage in the interactive process to accommodate her disability and/or perceived disability and terminated her solely due to her disability and/or perceived disability.

50.   Plaintiff's condition is an impairment that substantially limits one or more of her major life activities within the meaning of § 12102(1)(A) of the ADA.

51.   Plaintiff is a qualified individual who can perform the essential functions of her employment with or without a reasonable accommodation as defined by § 12111(8) of the ADA.

52.   Plaintiff CLEARFIELD has been unlawfully discriminated against, humiliated, and degraded, and as a result, suffers loss of rights and emotional distress.

53.   Defendants' actions and conduct were intentional and intended to harm Plaintiff CLEARFIELD.

54.   As a result of Defendants' actions, Plaintiff CLEARFIELD feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

55.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

56.   As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

57.   Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.   As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## FIRST CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE AMERICANS WITH DISABILITIES ACT

58.   Plaintiff CLEARFIELD repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

59.   Plaintiff claims Defendant HCL AMERICA INC. violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

60.   Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

61.   Defendant HCL AMERICA INC. engaged in an unlawful discriminatory practice against Plaintiff because of her disability, by failing to engage in an interactive process in providing Plaintiff with a reasonable accommodation, treating Plaintiff differently because of her disability, and terminating Plaintiff due to her disability/perceived disability.

## SECOND CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

62.   Plaintiff CLEARFIELD repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

63.     The Administrative Code of City of New York § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

64.     Defendants violated the section cited herein.

**THIRD CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

65.     Plaintiff CLEARFIELD repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

66.     The Administrative Code of City of New York § 8-107(15)(a) provides that, "[A]ny person prohibited by the provisions of this section from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

67.     Defendant HCL AMERICA INC. violated the section cited herein.

**FOURTH CAUSE OF ACTION FOR DISCRIMINATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

68.     Plaintiff CLEARFIELD repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

69.     The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

70.   Defendant MCGEE engaged in an unlawful discriminatory practice in violation of New York

City Administrative Code § 8-107(6) by aiding, abetting, inciting, compelling and coercing

the above discriminatory and unlawful conduct of Defendant HCL America, Inc.

**FIFTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

71.   Plaintiff CLEARFIELD repeats and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

72.   The New York City Administrative Code § 8-107(13) "Employer liability for

discriminatory conduct by employee, agent or independent contractor" provides:

   a.   An employer shall be liable for an unlawful discriminatory practice based upon the

   conduct of an employee or agent which is in violation of any provision of this

   section other than subdivisions one and two of this section.

   b.   An employer shall be liable for an unlawful discriminatory practice based upon the

   conduct of an employee or agent which is in violation of subdivision one or two of

   this section only where:

      1. the employee or agent exercised managerial or supervisory responsibility;
      or

      2. the employer knew of the employee's or agent's discriminatory conduct,
      and acquiesced in such conduct or failed to take immediate and appropriate
      corrective action; an employer shall be deemed to have knowledge of an
      employee's or agent's discriminatory conduct where that conduct was
      known by another employee or agent who exercised managerial or
      supervisory responsibility; or

      3. the employer should have known of the employee's or agent's
      discriminatory conduct and failed to exercise reasonable diligence to
      prevent such discriminatory conduct.

   c.   An employer shall be liable for an unlawful discriminatory practice committed  by

   a person employed as an independent contractor, other than an agent of such

employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

73.     Defendant violated the section cited herein as set forth.

### JURY DEMAND

74.     Plaintiff CLEARFIELD hereby requests a jury trial.

**WHEREFORE**, Plaintiff CLEARFIELD respectfully requests a judgment against the Defendants, individually, jointly and severally:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by the Americans with Disabilities Act, and the New York City Administrative Code, § 8-107 *et seq.*, in that Defendants discriminated against Plaintiff CLEARFIELD on the basis of her disability and/or perceived disability;

B.      Awarding damages to Plaintiff CLEARFIELD for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.      Awarding Plaintiff CLEARFIELD compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation;

D.      Awarding Plaintiff CLEARFIELD punitive damages;

E.      Awarding Plaintiff CLEARFIELD attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action;

F.      Awarding Plaintiff CLEARFIELD such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
       March 16, 2017

                                        **PHILLIPS & ASSOCIATES,
                                        ATTORNEYS AT LAW, PLLC**

                              By:       _____

                                        **Joshua P. Frank, Esq.
                                        Dorina Cela, Esq.**
                                        *Attorneys for Plaintiff*
                                        45 Broadway, Suite 620
                                        New York, New York 10006
                                        (212) 248-7431
                                        jfrank@tpglaws.com
                                        dcela@tpglaws.com

14

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Johanna Clearfield
699 Ocean Avenue, Apt. 2D
Brooklyn, NY 11226

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2017-00973 | Debra L. Richards, Investigator | (212) 336-3768 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry,
District Director

MAR 8 2017
*(Date Mailed)*

Enclosures(s)

cc:  Attn: Director of Human Resources
HCL AMERICA INC.
623 Fifth Avenue 19th Floor
New York, NY 10022

Joshua P. Frank, Esq.
PHILLIPS & ASSOCIATES
45 Broadway Suite 620
New York, NY 10006